U.S. COURTS

JUL 11 2025

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

Christopher Burdge – Pro Se
PO Box 6725
Boise ID 83707
Email:  auto457052@hushmail.com
Phone:  Not Used

### FEDERAL DISTRICT COURT
### NINTH JUDICIAL DISTRICT
### IN AND FOR ADA COUNTY IDAHO

| | |
|---|---|
| **Plaintiff**<br>CHRISTOPER BURDGE<br><br><br><br>v.<br><br><br><br>**Defendant**<br>CITY OF BOISE | **COMPLAINT**<br><br>**42 U.S.C. § 1983-14th Amendment COUNT 1: Emotional Distress Do to False Arrest and Imprisonment Resulting From Fraud in Theft of Plaintiffs Real Property**<br><br>$5 Million Compensatory Damages and $10,000 for each day criminal charges remain<br><br>Jury Trial Requested<br><br>Case No. 1:25- CV- 00371- AKB |

## CAUSE OF ACTION

1. The Due Process Clause of the 14th Amendment provides that no *"State deprive any person of life, liberty, or property, without due process of law."* Defendant and accomplice employees not known at this time did through multiple frauds steal Plaintiff's real property of Sawmill Island which resulted in his arrest and incarceration without legal cause resulting in emotional distress of pain and suffering, mental anguish, humiliation and degradation to a 72 year old honorable Veteran that had never been arrested or charged with a crime. The Due Process Clause of the 14th Amendment provides that no *"State deprive any person of life,*

**PAGE 1**

*liberty, or property, without due process of law.* Defendant deprived Plaintiff of his property and used that to deprive Plaintiff of his liberty without any due process of law because Defendant need to get rid of Plaintiff to cover up their fraud in theft of his property. Plaintiff files this action for $5 Million Dollars under 42 U.S.C. § 1983 for compensatory damages (*See* COMPENSATORY DAMAGES) and $10,000 for each day criminal charges remain.

## JURISDICTION AND VENUE

2. This is an action at law pursuant to 42 U.S.C. § 1983 for deprivation under color of state law, of rights, privileges, and immunities secured by the Fourteenth Amendment of the United States Constitution.

3. This Court has Jurisdiction pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law.

4. The Court may award attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976 (Act), *See* (Hanrahan v. Hampton, 446 U.S. 754 (1980)).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is the District in which all the events or omissions giving rise to Plaintiff's claims occurred; and pursuant to 28 U.S.C. §1391(c) because all Defendants reside within this District during such events.

## PLAINTIFF

6. Plaintiff, Christopher Burdge, **is** a former US Navy Diver, Special Weapons Experts, Torpedoman, SS Diesel Submarines in covert operations in Asian Pacific Operations in the last 4 years of the Vietnam War. He left the service honorably after 4 years on operations after the Fall of Saigon in 1975. A former Commercial Diver, Geologist for over 40 years. Never arrested or charged with a crime who claimed the unknown Sawmill Island in 2017 in adverse possession

**PAGE 2**

for the protection and restoration of this historic site where the Goodwin Sawmill is located that

built Boise from 1983 to 1925 for future generations of Boise and Idaho.

## DEFENDANT

7. Defendant, City of Boise is a corporate city created under the laws of Idaho. 150 N Capitol

Blvd, Boise, ID 83702  (208) 608-7000.

## LAWS VIOLATED BY DEFENDANT UNDER COLOR OF STATE LAW

8.  In *Davis v. Tuma,* Supreme Court of Idaho, 167 Idaho 267, 469 P.3d 595 (2020) states,

["In Idaho, a claim for actual fraud requires establishment of nine elements by clear and convincing evidence. *See Doe v. Boy Scouts of Am.,* 159 Idaho 103, 108, 356 P.3d 1049, 1054 (2015). [A] party must prove each of the following elements: (1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury."]

9.  In *State v. Henninger*, Court of Appeals of Idaho,130 Idaho 638, 945 P.2d 864 (1997) the

court defines theft as,

["A person commits **theft** when he knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the intent of depriving the owner thereof." I.C. § 18–2403(3).[1].]

10.  In Johnson v. McPhee, Court of Appeals of Idaho, 147 Idaho 455 210 P.3d 563 (2009)

stated,

["To recover for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the plaintiff's emotional distress, and (4) the emotional distress was severe. *Spence v. Howell,* 126 Idaho 763, 774, 890 P.2d 714, 725 (1995); *Payne v. Wallace,* 136 Idaho 303, 306, 32 P.3d 695, 698 (Ct.App.2001); *Davis v. Gage,* 106 Idaho 735, 741, 682 P.2d 1282, 1288 (Ct.App.1984)"].

## CITY OF BOISE IDAHO HAS NO IMMUNITY

11.  In 1978 the Supreme Court ruled in, Monell v. Dept. of Social Services of New York, 436

U.S. 658, 701 (1978), that Municipal entities can be liable where their "policies and practices"

**PAGE 3**

proximately cause constitutional injuries. The liability may be (1) where an express policy exits or (2) a claim may state that a, *"widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute custom or usage with the force of law."*

12.  Under assertion (1) State law determines whether a particular person or entity is the "final policy-making authority" (Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989)). In regards to Defendant City the City Council and Mayor are the *"final policy-making authority."* In City of St. Louis v. Prapotnik, 485 U.S. 112 (1988), the Court stated, *"When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final".*

13.  Under Assertion (2) a local government may be sued for deprivations caused by *"governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels"* (Monell, 436 U.S. at 691). To establish a custom or practice in the absence of a formal policy will usually require proof of repeated incidents suggesting a pattern or practice. The existence of a widespread practice can be so permanent and well-settled to constitute a custom or usage with the force of law. In Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987), custom or usage has force of law as *"widespread practice"* when *"duration and frequency of the practices warrants a finding of either actual or constructive*

**PAGE 4**

*knowledge by the governing body [or policymaker with responsibility for oversight and supervision] that the practices have become customary among its employees".*

14. Even a single decision made by the *"final policy making authority,"* such as the governing body of a local government or one having the power to decide finally on its behalf, can constitute a *"policy"* (Monell, 436 U.S. at 694-95. *See* also Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). *"Policy making"* is defined as *"a deliberate choice to follow a course of action . . . from among various alternatives." Id.* at 483).

15. The U.S. Supreme Court in Owen v. City of Independence, 445 U.S. 622 (1980) reversed and ruled that granting a qualified or good faith immunity to a *municipality* was not compatible with Section 1983's fundamental purpose of remedying violations of federal rights. In Owen v. City of Independence, 445 U.S. 622 (1980), (quoting Monroe v. Pape, 365 U.S. 167, 172 (1961)), stated, *"Moreover, § 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well. ... The knowledge that a municipality will be liable for all of its injurious conduct, whether committed in good faith or not, should create an incentive for officials who may harbor doubts about the lawfulness of their intended actions to err on the side of protecting citizens' constitutional rights. Furthermore, the threat that damages might be levied against the city may encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights."*

## COMPENSATORY DAMAGES

16. *"A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations"* (Borunda v. Richmond, 885 F.2d 1384, 1389 (9th Cir.

**PAGE 5**

1988); *See* also Smith v. Wade, 461 U.S. 30, 52 (1983)). Compensatory damages include actual

losses, mental anguish and humiliation, impairment of reputation, and out-of-pocket losses

(Borunda, 885 F.2d at 1389; Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir.

1987); Chalmers v. City of Los Angeles, 762 F.2d 753, 760-61 (9th Cir. 1985)). Municipalities

can be held liable for compensatory damages (Owen v. City of Independence, 445 U.S. 622, 657

(1980); Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996).

## CASE HISTORY

17. Plaintiff has been in adverse possession of Sawmill Island since June 2017 (See Complaint

and Supplemental of Ada County District Court civil case CV01-24-16072). Sawmill Island is

the historic site of the Goodwin sawmill that built Boise from 1883 to 1925. The Boise Lumber

Company owned the entire Island (*See* May 10, 1910 Deed Exhibit A) and abandoned the island

property in 1925 removing all the mechanical equipment leaving extensive concrete ruins that

have crumble over the past 100 years. In 2017 Plaintiff, a geologist, after extensive examination

of the island ruins determined that it was the location of the old sawmill which no one knew

about including the Historical Society. As stated in current ongoing civil suit against Boise Canal

Company (Case CV01-24-16072) the island property was a "land that time forgot." In the post

abandonment in 1925 followed by the Wall Street crash of 1929 and the Great Depression of the

1930's and World War 2 (Plaintiffs fathers war), then the Korean War, and the Vietnam War

(Plaintiffs war) and all the wars and social upheavals until today the island property was

forgotten and disappeared off record. The Boise Lumber Company disappeared leaving only

their Deed from 1910 (Exhibit A) which Plaintiff has as evidence of his right of adverse

possession under "color of title" under I.C. 5-208 (*See* Complaint and Supplemental Ada County

District Court of civil case CV01-24-16072).

**PAGE 6**

18. During the approximately 6-month period 2018-2019 the City of Boise and Police repeatedly harassed Plaintiff trying to drive him off the island where he was in actual possession "openly and notoriously" held in adverse possession. Plaintiff sent emails and written notices to the city government and police giving notice of adverse possession and any entrance on the island by them was trespassing. Suddenly in 2019 all the attacks and harassment stopped and Plaintiff assume (wrongly assumed) that the city finally accepted that Plaintiff had adverse possession under I.C. 5-208. The city did understand and knew that the only legitimate way to seize Sawmill Island was through the courts and only if they had an authentic deed showing their ownership which they did not have so they created a fraudulent scheme to steal the property expecting no one would discover it.

19. The scheme was to use a 1976 property deed (Exhibit B) to another property next to Sawmill Island owned by Defendant and then submit a fraudulent survey map of Sawmill Island to the Idaho Department of Lands claiming the entire Sawmill Island was a Boise River accretion, meaning created by the river as it meandered and thus get title for the island accreted property. The Idaho Department of Lands is required to make all such determinations of who owns what when it borders on state land such as the Boise River. Defendant's problem in their scheme was that the Idaho Department of Lands was not approving such a scam as it was obvious from records that Sawmill Island had always been there and originated from the land grant in 1866 to a man named Briggs and Defendants Scheme just stalled and was not completed. Regardless of this Defendant created yet another scheme through "hook or crook" managed to coerce in some way some person at the Ada County Property Assessors Office to have Defendants tax parcel number placed on Sawmill Island showing Defendant City as the owner.

**PAGE 7**

20. There had never been a tax parcel number on Sawmill Island which Plaintiff verified in August of 2018 (prior to Defendants scheme) during a visit to the tax appraiser's office and a discussion with Don Watts the head of the office. After a review in that visit Don said that there was never a tax parcel number on the property and it has always been just a "hole in the map" that no one had any idea about. On July 3, 2025 Plaintiff returned to the appraisers office and had a long meeting with Don Watts in his office for there now was a tax parcel number on the island that showed it was owned by the City of Boise which is impossible because Plaintiff has been legally in possession in adverse possession of it pursuant to I.C. 5-208 since 2017 and such possession cannot be overridden pursuant to Idaho Supreme Court decisions unless a verified land deed is presented in court which Defendant does not have.

21. From the quiet period in 2019 when Plaintiff assumed the city accepted the adverse possession until now the city has kept their scheme quiet hoping to get rid of Plaintiff in some fashion so no one would discover the scheme. Plaintiff spends every summer on the island camping to fulfill his requirement under I.C. 5-208 (*See* Complaint and Supplemental of Ada County District Court civil case CV01-24-16072) to maintain adverse possession of this historic island which he is trying to prevent it from being bull dozed under for a high end condo development as this large island is the last undeveloped land on the Boise River in Boise and developers are salivating over it. Plaintiff has devoted 8 years in protecting his property from development which the City of Boise wants to steal and sell it off quietly to a developer. Defendant City was getting desperate as Judge Brown in his recent decision on June 26, 2025, regarding a motion to dismiss by Defendants in that civil case (CV01-24-16072) has clearly stated that Plaintiff is in possession of Sawmill Island in adverse possession and has right to

**PAGE 8**

continue his claim of trespass *quare clausum fregit* against Defendant Boise Canal Company in that case.

**Page 11 Judge Brown's Memorandum:** [In Mueller, the Idaho Supreme Court notes that "Idaho recognizes two common-law actions for trespass – trespass quare clausum fregit and trespass on the case." 11 See Mueller, at 212, 345 P.3d at 1002. Trespass quare clausum fregit, unlike trespass on the case and statutory trespass under I.C. § 6-202, is predicated on "possession" not ownership. Id. ("trespass quare clausum fregit is an injury to the possession of real estate"). The Mueller Court clarifies that "'[a]s against a mere tort-feasor, actual possession of land, under claim of right, is sufficient to maintain trespass." Mueller, 158 Idaho at 213, 345 P.3d at 1003 (quoting Hanson v. Seawall, 35 Idaho 92, ___, 204 P. 660, 660 (1922). As such, the right to maintain an action for trespass quare clausum fregit appears to be available to one occupying real property under a claim of right" or "title" vis a via an alleged tort-feasor/trespasser. While the Court is unable to identify any controlling case in Idaho with respect to an inchoate adverse possessor suing a third party for trespass quare clausum fregit, the language in Mueller, and Hanson v. Seawell, 35 Idaho 92 (1922) make it clear to the Court the language quoted above, that a party claiming to be in the process of adversely possessing real property, such as Burdge and Sawmill, have standing to pursue this common law trespass claim.]

**Page 14 & 15 Judge Brown's Memorandum:** [Therefore, the Court will DENY Boise Canal's Motion based upon its assertion that there is an affirmative defense on the face of Plaintiffs' Complaint and Supp. Complaint Adverse Possession which is dispositive of Plaintiffs' claim for trespass quare clausum fregit. Boise Canal also argues that "trespass quare clausum fregit is an injury to the possession of real estate, and to recover under that theory one must be in either actual or constructive possession of the real property at the time of the trespass." See Supporting Memorandum, p. 8 (citing Mueller) [Bold emphasis in the original]. Boise Canal argues that "Plaintiff[s were] not in actual possession at the times of the alleged trespass. Id., p. 9. Boise Canal then recites various claims contained in Plaintiffs' Complaint, i.e., absence from the property pursuing overseas travel, Boise Canal did its dirty work when Burdge was "away" or "gone for the day." Id. Once again, the Court concludes that these are factual issues that will be sorted out at summary judgment or trial. Idaho is a notice pleading state. "[I.R.C.P.] 8(a)(2) provides that a pleading setting forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See Brown v. City of Pocatello, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010). In this Court's view and as discussed above, Plaintiffs have done this. However, they have complicated this issue by setting out a very lengthy narrative giving rise to a number of facts that will have to be considered at a later evidentiary hearing concerning whether their claimed adverse MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS - 15 possession was in fact continuous possession (there is nothing in the case law that would suggest that a party who is attempting to adversely possess real property must physically remain on and occupy the property continuously for the statutory period of 20 years) rather other indicia may suffice to establish that their possession and occupancy is "actual, open, visible, notorious, continuous and hostile to the party against whom

**PAGE 9**

the claim is made."12 See Luce v. Marble, 142 Idaho 264, 272, 127 P.3d 167, 175 (2005); I.C . §
5-209. Consistent with the holdings in Mueller and Hanson v. Seawall, 35 Idaho 92, ___, 204 P.
660, 660 (1922), the Court concludes that Plaintiffs' pleadings, its Complaint and Supp.
Complaint Adverse Possession, when viewed from the lens of the legal standard for a 12(b)(6)
motion, as articulated supra, satisfy this Court that the Plaintiffs' claim of trespass quare
clausum fregit has been adequately pled for purposes of I.R.C.P. 8(a)(2) and the disputed issues
and facts regarding whether the elements of adverse possession, including possession, and
whether Boise Canal exceeded the scope of its rights and protections under I.C. § 6-202(3) and
I.C. § 42-1102(2).]

22.    Boise Canal Company is a private company that does all of Defendant City's canal clearing

and work and believed to be directly involved in Defendant City's  scheme of stealing Sawmill

Island from Plaintiff.  Defendant City knew that the fraudulent scheme aforementioned would be

discovered and they needed Plaintiff out of the way and thus the arrest and incarceration of

Plaintiff. Under Idaho law I.C. 5-208 (See Complaint and Supplemental Case CV01-24-16072).

Plaintiff is the defacto owner of Sawmill Island under "color of title" in adverse possession

which is no different than a 20 year mortgage of a property where the one in possession of the

mortgaged property has all the rights and benefits of ownership where at the end of the 20 years

they get the full Deed to the property from the mortgage holder. If Plaintiff was not the de facto

owner under adverse possession I.C. 5-208 under "color of title" (1910 Boise Lumber Company

deed Exhibit A)) then Judge Brown would have tossed Plaintiff case out the window. Only a

person with right of property ownership can pursue court action against another.

23.    Plaintiff has camped on Sawmill Island for 8 summers and 2 winters to ensure his claim of

adverse possession under the requirements of I.C, 5-208 are honored. On July 5, 2025 (before

Plaintiff knew of the fraud and theft) a hot day with no wind Plaintiffs camp stove blew back on

him and started a grass fire on the island where he was in the process of putting out with buckets

of water when the Boise Police came on the island and arrested him under I.C. 18-7004 FIRING

TIMBER LANDS, MISDEMEANER. The arresting officer's reason was that according to their

**PAGE 10**

records the island belongs to the City of Boise because of the fraudulent parcel number now on the island which is where the fraudulent scheme of Defendant City comes into play. Plaintiff has never been arrested or charge with a crime a totally spotless record and is an honorable Veteran as a US Navy Diver, Special Weapons Expert, Torpedoman, SS Diesel Submarines throughout the Asian operational zone in the last 4 years of the Vietnam War.

24.    Boise Police had no legal right to arrest and charge Plaintiff with I.C. § 18-7004 for I.C. § 18-7001 as meticulously defined in *State v. Nastoff*, Court of Appeals of Idaho, 124 Idaho 667, 862 P.2d 1089 (1993) where the person in legal possession of land OR where not in possession did not start the fire maliciously cannot be charged. Plaintiff has legitimately camped on Sawmill Island for 8 years as a requirement of adverse possession under I.C. 5-508 and never had any fire on his property and the one that happened was accidental do to a camp stove blow back and burned only an area of 100 by 60 feet of grass and a few very small sapling trees. This is at best only a small property lot completely surround by water and caused no problems for anyone else where the authorities overreacted. Legal Memorandum has been submitted to the County Prosecuting Attorney requesting the criminal case be dropped pursuant to *State v. Nastoff*, Court of Appeals of Idaho, 124 Idaho 667, 862 P.2d 1089 (1993). Plaintiff brings the case before the Court now for Emotional Distress in the pain and suffering, humiliation and degradation from the arrest and incarceration for one week (bailed out) as a direct result of Defendant City's fraudulent scheme to have their tax parcel number placed on Sawmill Island which the Boise Police used as their excuse for arresting Plaintiff. Such Emotional Distress has only continued after leaving incarceration after finding out that Defendant had been since 2019 perpetrating its crimes in the theft of Plaintiffs property. Defendant did through multiple frauds steal Plaintiff's property of Sawmill Island which resulted in his incarceration without legal right causing

**PAGE 11**

Emotional Distress of pain and suffering, humiliation and degradation to a 72-year-old honorable Veteran that had never been arrested or charged with a crime.

## CASE & FACTS

25. Defendant did create a scheme of fraud resulting in theft of Plaintiffs real property (land) in collusion with unknown employees of Defendant City and others in the private sector to be determined which directly resulted in Plaintiff being arrested and incarcerated. Defendants scheme included the use a 1976 property deed (Exhibit B) unrelated to Plaintiffs property of Sawmill Island deed (Exhibit A) where Defendant created a land survey map (Exhibit C) of Sawmill Island that was a complete fraud in order to steal Plaintiffs land he holds in adverse possession for over 8 years, using such aforementioned instruments to have a never before tax parcel number placed on Plaintiffs property showing Defendant as owner.

26. The 1976 deed Defendant City used in their fraud is a legitimate deed which has nothing to do with Sawmill Island. The 1976 deed is for the narrow strip of land (average width of 62 feet) running from approximately the line between Section 13 and Section 24 (near the end of the Warm Springs Golf Course parking lot area) along the SW side the old railroad tracks now the asphalt green belt bike trail in a South West direction (upstream direction of the actual river) for 1740 feet and then returning the distance to the North West along the high water line of Walling Ditch also known as Boise Irrigation Canal. This narrow strip of land contains the old penitentiary ditch that supplied water to the penitentiary over 150 years ago and predates the creation of Sawmill Island which is a manmade island created by Jerome Walling in 1867 by digging Walling Ditch.

**PAGE 12**

27.  Defendant City knew that they could not steal Sawmill Island from Plaintiff in court because they had no actual deed with their name on it showing the entire island where the sawmill operated from 1983 to 1925. So, Defendant City created a scheme claiming in a petition to the Idaho Department of Lands that the entire Sawmill Island with all the concrete ruins of the sawmill still there had all accreted onto their property (1976 deed) over many years do to the meander of the Boise River. Defendant City's claim was the river meandered in a westerly direction and the river deposited all of Sawmill Island and that this accretion was part of the 1976 property and thus the island is theirs. Defendant City submitted their fraudulent claim to the Idaho Department of Lands for approval with the fraudulent land survey map (Exhibit C) resembling Sawmill Island. The Idaho Department of Lands investigated this alleged massive accretion of an entire historical island and would not approve it so Defendants scheme died on the vine. Somehow regardless of no approval of ownership of Sawmill Island, Defendant City mysteriously through "hook or crook" got the city tax parcel number placed on the tax assessor's map where there has never been such a number on it as the 2018 assessor's maps shows (Exhibit D). Sawmill Island has always been there and was cut out of a Idaho Territorial Land grant in 1866 to a man named Briggs, and eventually became a sawmill in 1983 to 1925.

28.  Plaintiff's visit to Don Watt's tax appraisers office on July 3, 2025, Don explained that in order to have a tax number put on a piece of land there had to be a deed showing name of the actual owner and a survey map representing the deed. Land bordering on state river land has to be examined where the state determines who owns what. The state obviously saw accretion fraud put forth by Defendant City and the fraudulent scheme died there. The result of all this fraud is that Defendant City mysteriously got its tax parcel number on Sawmill Island after the 2019 scheme failed showing ownership which is theft of real property (Land) and the Boise Police

**PAGE 13**

used that number to arrest Plaintiff on June 25, 2025. On July 7, 2025 Plaintiff talked to Don

Watts at the appraisers office where Don said that he did not know how the Defendants tax

parcel number go on the assessors map and he was unable to find the "notes" regarding the issue.

29.  Since 2018 when Plaintiff's clashes with Defendant City began over Sawmill Island until

the June 25, 2025 arrest of Plaintiff the Defendant had tried to keep their fraudulent scheme

secret hoping to find some way to get rid of Plaintiff and no one would ever discover their fraud

and Sawmill Island could be sold off quietly for a very high-end exclusive condo development.

During the ongoing civil case against Boise Canal Company (CV01-24-16072) neither the

Defendant in that case nor their attorneys of Saw Tooth Law Firm ever brought up the point that

the Defendant City had their tax parcel number on the property which would have made a quick

an irrevocable dismissal of Plaintiff's case. Instead Saw Tooth Law firm threw every piece of

mud they could in their motion to dismiss and still failed as Plaintiff is the de facto owner in

possession of Sawmill Island in adverse possession when a simple mention of Defendant City's

tax parcel number would have ended the case. There are a lot of dirty hands in this case of fraud

and theft of real property that resulted in the arrest of an honorable Veteran that has never been

arrested or charged with a crime because he has been for 8 years trying to protect a rare one of a

kind history historic island site so the people of Boise and future generations will have access to

it (See Complaint and Supplemental Case CV01-24-16072).

## COUNT 1

Defendant and accomplice employees not known at this time did through multiple frauds steal

Plaintiff's real property of Sawmill Island which resulted in his arrest and incarceration without

legal cause resulting in emotional distress of pain and suffering, mental anguish, humiliation and

degradation to a 72 year old honorable Veteran that had never been arrested or charged with a

**PAGE 14**

crime. The Due Process Clause of the 14th Amendment provides that no *"State deprive any*

*person of life, liberty, or property, without due process of law.* Defendant deprived Plaintiff of

his property and used that to deprive Plaintiff of his liberty without any due process of law

because Defendant needed to get rid of Plaintiff to cover up their fraud in theft of his property.

 Plaintiff files this action for $5 Million Dollars under 42 U.S.C. § 1983 for compensatory

damages do to his arrest and incarceration for emotional distress of pain and suffering, mental

anguish, humiliation and degradation that was the direct result of Defendants multiple frauds and

theft of property and the time after when Plaintiff had to deal with the realization that such theft

had occurred. Plaintiff will never quit until justice is rendered on Defendant. In addition $10,000

for every day the fraudulent criminal charges remain against defendant beginning June 25, 2025.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief and judgement as follows:

### COUNT 1

- A. Awarding compensatory damages in favor of Plaintiff and against Defendant sustained as the result of Defendants deliberate wrongdoing, for the amount of:
  - (1) : $5,000,000 (Five Million Dollars) for emotional distress of pain and suffering, mental anguish, humiliation and degradation during the arrest and thereafter incarceration and also inclusive of the entire time after incarceration where Plaintiff had to deal with the magnitude of the fraud and theft discovered from 2019 to the present of Sawmill Island his property legally held under adverse possession, plus $10,000 for each day criminal charges remain beginning June 25, 2025.
- B. Removal of the fraudulent tax appraiser's number on Sawmill Island from the tax appraiser's map.
- C. Awarding Plaintiff reasonable cost and expenses incurred, in this action, including counsel fees, court cost and expert fees, cost of living expense fees during this case when Plaintiff would not normally be in Boise and;
- D. Such equitable, injunctive or other relief as deemed appropriate by the Court.

*Christopher Burdge*  Date: *July 11, 2025*

CHRISTOPHER BURDGE: PLAINTIFF

**PAGE 15**